IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MOHAMMED MUSTAFA SOHAIL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0993 (RMU) |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate

General's Corps, United States Navy, hereby state that to the best of my knowledge, information,

and belief, the following is true, accurate and correct:

      1.      I am the Legal Advisor to the Office for the Administrative Review of the

Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In

that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

      2.      I hereby certify that the documents attached hereto constitute a true and accurate

copy of the portions of the record of proceedings before the Combatant Status Review Tribunal

related to petitioner Mohammed Mustafa Sohail that are suitable for public release. The portions

of the record that are classified or considered law enforcement sensitive are not attached hereto

or were redacted by an OARDEC staff member. This staff member also redacted information

that would personally identify certain U.S. Government personnel, contract employees, and

foreign nationals in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: _18 October 2005_           _Teresa A. McPalmer_
                                       Teresa A. McPalmer
                                       CDR, JAGC, U.S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 8 4 4

FOR OFFICIAL USE ONLY

29 JAN 2005

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR
DETAINEE ISN #1008**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #1008 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

20 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor  *ʒℒℂ*

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN #1008

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #19 of 4 Nov 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

      a.  The detainee was properly notified of the Tribunal process and elected to participate
      by attending the CSRT, and by providing an unsworn statement to the Tribunal through
      his personal representative, and by responding to questions posed by the CSRT.  *See*
      Encl. (2) at Enclosure (3).

      b.  The Tribunal was properly convened and constituted by enclosure (1).

      c.  The Tribunal substantially complied with all provisions of references (a) and (b).

      d.  Note that some information in Exhibit R-4 was redacted.  The FBI properly certified
      in exhibit R-2 that the redacted information would not support a determination that the
      detainee is not an enemy combatant.

      e.  The detainee did not request that any documentary evidence be produced.  The
      detainee did request that a United States citizen, ███████████ who is employed at
      Dyna Corp in Kabul, Afghanistan, be produced as a witness to refute the allegations
      contained in the Summary of Evidence.  The CSRT determined that the witness'
      testimony, as proffered by the detainee, was relevant.  Accordingly, the CSRT approved
      the request.  On 9 Nov 04, the Tribunal forwarded the request to the U.S. Department of
      State, who attempted to contact the witness.  On 22 and 29 Nov 04, the Tribunal made
      two follow-up attempts through the State Department to contact the witness.  However,
      the witness failed to respond.  Consequently, the CSRT determined that the witness was
      not reasonably available, nor was there a reasonably available substitute for his
      testimony.  The determination was proper.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 1008

    f.    The Tribunal's decision that detainee #1008 is properly classified as an enemy combatant was unanimous.

    g.    The detainee's Personal Representative was given the opportunity to review the record of proceedings, and declined to submit post-tribunal comments to the Tribunal.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

KAREN M. GIBBS
CDR, JAGC, USNR

2
UNCLASSIFIED



## Department of Defense
### Director, Combatant Status Review Tribunals

4 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

> MEMBERS:
>
> ███████████, Colonel, U.S. Army; President
>
> ███████████ Commander, U.S. Navy; Member
>
> ███████████ Major, JAGC, U.S. Army Reserve; Member
> (JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM:  OARDEC FORWARD Commander ICO ISN 1008

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███████.

for

CHARLES E. JAMISON
CAPT, USN

UNCLASSIFIED/~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#19____
ISN #: _____1008___

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida and/or associated forces that are engaged in hostilities against the United States or its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is associated with the Taliban or al Qaida. The Detainee worked at a U.S. military base in Kabul, Afghanistan. The Detainee assisted a member of a terrorist organization, Hezb-E-Islami Gulduddin, who had plans to plant a bomb at a U.S. military base in Afghanistan. Hezb-E-Islami Gulduddin is a known terrorist organization that has long established ties to al Qaida. The Detainee provided a list of personnel assigned to the Karzai Protection Detail and the serial numbers to their weapons to a member Hezb-E-Islami Gulduddin. The Detainee provided photographs of a U.S. military base in Afghanistan to a member Hezb-E-Islami Gulduddin. The Detainee provided computer media containing a template of the security badge used at a U.S. military base in Afghanistan and digital images of personnel involved with security at the aforementioned base. The Detainee stole his work computer and transferred the information to computer media for the purpose of providing it to a member Hezb-E-Islami Gulduddin. The Detainee applied for a visa to the United States under a different name. The Detainee chose to participate in the Tribunal process. He called one witness, requested no documents be produced, and made an oral, sworn statement. The Tribunal President found the requested witness not reasonably available, and that alternative means of producing the witness's testimony were also not reasonably available. The Detainee, in his sworn, oral statement, denied being part of the Taliban or al Qaida. The Tribunal President's evidentiary and witness rulings are explained below.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

UNCLASSIFIED/~~FOUO~~

a. Exhibits: D-a, R-1 through R-15

b. Testimony of the following persons: none.

c. Sworn statement of the Detainee.

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested one witness be produced for the hearing:

| Witness | President's Decision | Testified? |
|---|---|---|
| ███████████ | not reasonably available | no* |

\* The Tribunal President deemed that the Detainee's request for this witness was relevant to the Detainee's status as an enemy combatant. The Department of State was contacted on 9 November, with follow-up attempts made on 22 November and 29 November. As of 1 December 2004, the Department of State had received no response to the status of this witness request. Therefore, the Tribunal President made the determination that based on the attempt to contact and lack of response; the witness is not reasonably available.

The Detainee requested no additional evidence be produced.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee stated that he worked for an American company, Dyn Corporation at Site #3 in downtown Kabul, Afgahnistan, not at a military base. The Detainee said that he had worked for the company for about six months, first as a translator/driver and then as a finance clerk. The Detainee had heard that ████████ was a commander of Hezb-E-Islami Gulbuddin (HIG) and controlled the road between Kabul and Jalalabad but that he never assisted him in

UNCLASSIFIED/~~FOUO~~

any way; he just saw ▓▓▓▓ at the office in Kabul. Taking pictures was part of the Detainee's job so that he could produce security badges for the Dyn Corp. staff. He contends that he was allowed to take his computer home for a computer course that he was enrolled in. Further, the Detainee stated that he did apply for a visa with his family but never used a different name. The Detainee claims that ▓▓▓▓ and ▓▓▓ approached him at his work with allegations that he was working for someone. The Detainee said he got scared and ran away, later contacting his father in Jalalabad. His father returned with the Detainee to his workplace and the Detainee was then placed into custody. The Detainee said that he was beaten and tortured and because of this, he told an American named ▓▓ and Afghanis that he had provided a list of personnel assigned to the Karzai Protection Detail and the serial numbers to their weapons to a member of HIG. The Detainee was unclear when he reported this abuse but thought that it was about a year and a half ago.

As noted above, the Detainee made an allegation of physical mistreatment while he was in detention in Kabul, Afghanistan at the hands of his Afghani captors and American interrogator. The Tribunal made inquiry of the Detainee to note his statements about such alleged mistreatment. The Tribunal President has caused these allegations to be reported to the chain of command.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate.

    b. The Detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

    c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with al Qaida and/or associated forces that are engaged in hostilities against the United States or its coalition partners.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

**8. Dissenting Tribunal Member's report**

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/~~FOUO~~

SECRET//NOFORN//X1

**(U) Combatant Status Review Tribunal Decision Report Cover Sheet**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#19___

(U) ISN#: ___1008___

Ref:    (a) Convening Order for Tribunal #19 of 4 November 2004 (U)
        (b) CSRT Implementation Directive of 29 July 2004 (U)
        (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl:    (1) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
        (2) Classified Summary of Basis for Tribunal Decision (S//NF)
        (3) Summary of Detainee/Witness Testimony (U//FOUO)
        (4) Copies of Documentary Evidence Presented (S//NF)
        (5) Personal Representative's Record Review (U)

(U) This Tribunal was convened on 1 December 2004 by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The Tribunal has determined that Detainee #1008 is properly designated as an enemy combatant as defined in reference (c).

(U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, al Qaida and/or associated forces that are engaged in hostilities against the United States or its coalition partners, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

SECRET//NOFORN//X1

UNCLASSIFIED/~~FOUO~~

## Summarized Unsworn Detainee Statement

Tribunal President: I just want to verify before we get started that you feel comfortable with listening to us in English and just use your translator when you have a question. Is that the way you'd like to proceed?

Detainee: Yes.

Tribunal President: Ok.

*The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibits R-1 and R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*Tribunal President stated that the detainee wants to participate and requested one witness. The witness request was deemed was relevant, but, after several attempts to contact the Department of State, we have not received a response on the status of this witness. The witness has been deemed not reasonably available. However, if the witness's testimony does come available, this tribunal may reopen this case.*

*Initially, the detainee wasn't sure on taking the Muslim oath, but, after clarification from the Tribunal President, and his Personal Representative, The detainee did want to take the Muslim oath.*

*The Personal Representative read the accusations to the detainee so that he could respond to the allegations. The Personal Representative read from notes taken from a previous interview with the detainee. The allegations appear in italics, below.*

*3.a. The detainee is associated with the Taliban or al Qaida*

*3.a.1. The detainee worked at a U.S. military base in Kabul, Afghanistan.*

Personal Representative: (speaking on behalf of detainee from notes taken): That is not true. He worked for an American company, not at a military camp, not at a military base. Not at a military base for Special Forces or Army. He worked for the Dyne Corporation. He was a translator, driver for ███████████ and American program officer at site 3. This company was located in downtown Afghanistan, only a quarter mile from the presidential palace. Not a military base. The military base was actually in Bagram some fifty miles drive away.

Tribunal President: I'm sorry, could you please repeat the name of the town?

Personal Representative: Sure, it was Kabul.

(The Personal Representative then asks the detainee if he has anything else to add or say, the detainee responds, "no".)

*3.a.2. The detainee assisted a member of a terrorist organization, Hezb-E-Islami Gulduddin, who had plans to plant a bomb at a U.S. military base in Afghanistan.*

Personal Representative: (speaking on behalf of detainee from notes taken): No, I did not assist any member. I mentioned that I worked for a person named ███████ who worked for the Dyne Corporation. He was a commander to escort equipment from Herot to Kabul. That's what ██████ did. His job was a contractor for the Dyne Corporation. He had heard of his name before as a commander of the HIG and as a famous thief between Herat and Kabul. (The detainee interrupts, to correct Personal Representative) No, between Kabul and Chava (ph). And then I saw him at the Dyne office. After I was accused at the office, I ran away to home, I told my father what happened and then two days later went back with my father to the Dyne Corporation.

(The Personal Representative then asks the detainee if he has anything else to add or say, the detainee responds, "no".)

*3.a.3. Hezb-E-Islami Gulduddin is a known terrorist organization that has long established ties to al Qaida.*

Personal Representative: (speaking on behalf of detainee from notes taken): I did not know it was identified as a terrorist group, I only knew ███████ all I knew was that ████ was part of HIG. At capture, I told them that I worked for the Dyne Corporation but no one would listen to me, when they captured me, they would not listen.

(The Personal Representative then asks the detainee if he has anything else to add or say, the detainee responds, "no".)

*3.a.4. The detainee provided a list of personnel assigned to the Karzai Protection Detail and the serial numbers to their weapons to a member Hezb-E-Islami Gulduddin.*

Personal Representative: (speaking on behalf of detainee from notes taken): I said this under torture. I said I worked for ████ because they were threatening me. ███ is the specific name. ███ an American civilian, told me if I don't say whom I worked for, I kept saying ██████ but they would not believe me. And after sixty-eight hours, I said ████ so that I could be released. Again, ███ was an American, tortured and threatened me with a gun to my mouth, to try to make me say something. Also, regarding that same one, I did say these things under pressure, I had to lie, and they exist in the files because I lied thinking that I would be released.

UNCLASSIFIED/~~FOUO~~

*3.a.5.  The detainee provided photographs of a U.S. military base in Afghanistan to a member of Hezb-E-Islami Gulduddin.*

Personal Representative: (speaking on behalf of detainee from notes taken): I never took any pictures of any base. I was never at any military base. Again the corporation I worked for was downtown. (The detainee interrupts; making sure that the name of the company was mentioned.) It was the Dyne Corporation. It wasn't at a military base.

(The Personal Representative then asks the detainee if he has anything else to add or say, the detainee responds, "no".)

*3.a.6.  The detainee provided computer media containing a template of the security badge used at a U.S. military base in Afghanistan and digital images of personnel involved with security at the aforementioned base.*

Personal Representative: (speaking on behalf of detainee from notes taken): Part of my job was to take pictures for security badges. I did not give any template of badges to anyone. I did say this, but, under distress. They kept saying, what info did you give, to show them, we will not release you, until I tell them the info. So, I made up this lie as well. Part of my job was to take photographs but, during the pressure, he told them that he provided them to the terrorist organization. But, again, in actuality, part of his job for the Dyne Corporation was taking photographs, laminating them and making security badges for people.

Detainee:  For the staff, for the members of the staff for the Dyne Corp staff.

*3.a.7.  The detainee stole his work computer and transferred the information to computer media for the purpose of providing it to a member Hezb-E-Islami Gulduddin.*

Personal Representative: (speaking on behalf of detainee from notes taken): I never said this. I never stole this. ▮▮▮▮▮▮▮ allowed me to take the computer home to use it for a computer course. He allowed me to use it at home a lot.

(The Personal Representative then asks the detainee if he has anything else to add or say, the detainee responds, "no".)

*3.a.8.  The detainee applied for a visa to the United States under a different name.*

Personal Representative: (speaking on behalf of detainee from notes taken): I did, but it was with my entire family in Paris. I never tried to use a different name. He denies that he tried to use a different name.

Detainee:  (speaking without translator) Because, I did it because of the lack of education in Afghanistan. When we apply, we do it with our whole families to go to a foreign countries.   It wasn't, I didn't mention anything to the embassy (inaudible) office, so I didn't mention that I wanted to go to the U.S., but I mentioned, to any foreign countries.

UNCLASSIFIED/~~FOUO~~

(The Personal Representative then asks the detainee if he has anything else to add or say, the detainee responds, "no". The Personal Representative once again, explains to the detainee he can make a general statement if he wants to at this time, and if not, then his section will be done.   The detainee declines.)

Personal Representative:  Tell us, in detail, what it is that you did for the Dyne Corporation, what your responsibilities were.

Detainee:  At first, when I joined the Dyne Corporation, I was translator, with driver. Then, I become a purchase and finance clerk.

Tribunal President:  Recorder, do you have any questions for the detainee?

Recorder:  Yes Ma'am.  What type of computer course were you enrolled in?

Detainee:  HTML

Recorder:  Through what agency was this possible?

Detainee: The course?

Recorder:  Yes.

Detainee:  It was private.

Recorder:  Private?

Detainee:  Yes.

**The Personal Representative and the Recorder had no further questions.**

Tribunal Members' questions

Q. Sir, you are a native of what country?
A. Afghanistan.

Q. Have you ever traveled outside of Afghanistan, other than this opportunity?
A. Pakistan.

Q. When was the last time you traveled to Pakistan on your own?
A.  It was at the end of Taliban. 2000.

Q. And, what was the purpose in that travel?
A. Because, during the war in Afghanistan, that, we all went to Pakistan.  The war when the Americans take Afghanistan, so we went to Pakistan.

UNCLASSIFIED/~~FOUO~~

Q. How old are you?
A. I'm twenty-four.

Q. And, before you worked for Dyne Corporation, first of all, when did you start working for Dyne Corporation?
A. I worked from 17 October 2002.

Q. And before that, what did you do?
A. I worked for the E(inaudible) Foundation Organization, American angels (inaudible).

Q. And what did you do for them?
A. Admin and finance assistant.

Q. What other types of job have you held?
A. I was making the reports, making the financial.

Q. Before working for them, whom did you work for?
A. I was working as a computer instructor.

Q. Have you ever been a member of any political party or group?
A. No.

Q. What's the highest grade level you've completed?
A. High school.

Q. Did you know that being a member of the HIG would be considered wrongful in the view of the United States?
A. I didn't know what that is.

Q. The Hezb-E-Islami Gulduddin, did you know that the United States viewed that group as a, for lack of better term, a bad group?
A. I don't know about that.

Q. You didn't know that the United States…
A. Yes, I know its an organization, an Islami Organization, I don't know anything about that.

Q. Okay. Did you even know what their purpose was? What they existed for?
A. No. Yes, I know during the Russian war they were fighting in front of the Russians.

Q. So, you didn't know they were fighting the United States?
A. No.

Q. You said that you were tortured, corrected? Tortured?
A. Yes.

UNCLASSIFIED/~~FOUO~~.

Q. Specifically, your personal representative mentioned that somebody put a gun in your mouth?
A. Yes.

Q. Other than that, did anybody torture you?
A. After that, two Afghani's guys came; down in Kabul, in a place which where Mr. ▮▮▮▮ was interrogator. So, they came, start the same questions for me. And they start beating, so, when I was bleeding, one of the American guy told them to stop the beating, so, he stop beating, and then they left. After that, they put me in all night, in cold weather, in a cage, in a dog cage.

Q. And this torture was being done where?
A. Kabul.

Q. At a U.S. facility?
A. Yes.

Q. And when was the first time, when you reported all this torture?
A. In Bagram.

Q. In Bagram? How long after it happened did you tell somebody?
A. Like to every interrogators.

Q. You don't remember the first time, how long it had been since you were tortured, until you told somebody?
A. One and half years ago.

Q. The man who beat you, do you think he was American?
A. Yes.

Q. This man, that, I think who was asking you questions, that started this whole thing to provide information. Did you know him before?
A. No.

Q. He just came up to you and started talking?
A. Yes.

Q. And, you said, you had informed your father, about this? Is that what I understood? Who did you inform, and when?
A. The first thing, the first stop, when I came back to home, I said to my father, I got problem? He told me, are you working for anybody? Are you working for any political people, or to any organization? I told him no. He told me then, why are you scared? Go back to office. Then on Saturday, because Friday was off, in Afghanistan, so, on Saturday, I went to office. When I went there, with my father, so, if I'm working with any of the organizations, or if I'm Taliban, or al Qaida then why, I go back to office?

UNCLASSIFIED/~~FOUO~~

Q. Did this man threaten you?
A. The ███████

Q. Yes.
A. No.

Q. How did this meeting start? Were you just walking down the street, eating somewhere, did he just approach you, how did this start?
A. Who approach me?

Q. The ███████. Who is the one that asked for this information?
A. Nobody asked for information.

Q. Nobody?
A. Nobody.

Q. So, who is this particular guy that...?
A. I said lie when I was in Kabul, to get released. I was scared; I said I give information to bad guy. I said to Mr. ██████ because, he said just tell us who you are working, if you don't say, we will send you to Cuba, and you will never see your family, and we will send you forever. So, just say to whom you are working. And, then I thought, say lie, and I said lie.

Q. Oh, so nobody asked you for information?
A. No, nobody.

Q. Then, why do you think they arrested you?
A. I don't know. Because, I was scared, scared from office, then I thought, that they thought that this guy, yeah, he's working for somebody. And that was the first time that I thought I got that problem, and I got scared. I go home. So, when I went back to office, they thought, oh maybe he's working for somebody.

Q. Nobody asked for information, but what did you tell your father, again?
A. I told my father, that, I have this problem at my office. They are saying that you are working for anybody, for any organization? And he asked are you? And I said no. And he said go back to office.

Q. Did somebody at your office accuse you of possibly working with somebody?
A. At first, I say yes.

Q. And that's when you told your father that somebody at work is accusing you of working with somebody?
A. Yes.

UNCLASSIFIED/~~FOUO~~

Q. What type of relation did you have with ██████████ was it a pretty open, pretty friendly relation?
A. Just my program officer.

Q. Do you feel that he would've been able to give us a lot more information on what you did?
A. Yes, because I worked with him six months, like I went to office from six in the morning to eleven o'clock or ten o-clock at night, like more than with my families, I work with ██████████ so, he knew everything about me.

Q. He worked in the same office with you saw you daily?
A. Yes.

Q. Do you think he would've told us that you were not involved with any of these groups? What do you think he would've told us?
A. He will tell you that I work with him; nobody came to our office like a politician or from government. He will tell you like that, I know him, he isn't linked to anybody.

Q. Do you think he was ever suspicious of you working with anybody else?
A. No.

Q. And he never made any comments to you, asking you?
A. No.

Q. You had made a comment that you wanted a Visa to go to any country? Is that what you were saying?
A. Yes, that was during the Taliban, because, during the Taliban, there's no education in Afghanistan, and also economic problems with all people, so, all people applied to U. S. office. United Nations for refugees (inaudible). So, we applied for that, so we applied for any foreign countries. Europe or Americas.

Tribunal President's questions.

Q. Can you tell us a little about your arrest, capture, when it occurred, and how did they come to your office, how did they take you into custody?
A. It was Saturday morning; I came to office with my father, when I came, Mr. ████and Mr.█ they were working on…. They told the guy, they said, to sit down, and take your hands out of pockets, so, when I took them out, they put handcuff on me, and they took me. Mr. ██████

Tribunal member: So, was that after you were accused?
A. Yes.

Q. (Tribunal President): That was when you came back to the office, when they picked you up?
A. Yes.

UNCLASSIFIED/~~FOUO~~.

Q. And you know, about what time, when that was, as far as month, day, year, was it in 2000, 2002?
A. 5th April 2002

Tribunal President: I want to thank you for participating in this tribunal today.

Detainee: You're welcome.

Tribunal President: Is there anything else that you would like to say to this tribunal?

Personal Representative: Actually, can I ask another question Ma'am? I know I was given an opportunity already, but one has come up.

Tribunal President: Yes, certainly.

Personal Representative: Who, originally, you went to work one day, somebody originally accused you of something, because, that's why you ran. Who was that?

Detainee: Who accused me?

Personal Representative: Yes.

Detainee: That was ███████████

Personal Representative: What did he say to you that day. You came into work, you thought everything was fine, and then ████ came up to you, what was said, that made you run home?

Detainee: When, the first, or when ████ came, or at the end or first?

Personal Representative: Yes, the very first time you were every accused of anything. Who was it and what was said?

Detainee: ████ I come outside from dining room, so when I come to office ███████ ████ and one other guy, they came and they asked me to who are you working for? I told them I 'm not working with anybody. They said, no, you are working with somebody. At first, they told me they would send you to Cuba forever, ████ told me, that was in the office. At first, I was scared, that's why I ran home.

Personal Representative: And the matter of the second question is, if I may, is when we chatted, you saw ███████ in the office, and you recognized ███████ and you said that ████████ worked for the Dyne Corporation. Is that right?

Detainee: I didn't recognize him. I, that guy was, he came with █████████ and he was working in the fuels section with Dyne Corp. That was (inaudible). So, ███████ came

UNCLASSIFIED/~~FOUO~~

with him to the office, he introduced me, he was escorting the equipments from Herat to Kabul. So, in that time, he told me, he's Commander ████████ he's from Southern Kabul, in western Kabul. So, in that time, I said, I say, yeah, that's, he's the ████████, a famous thief in Kabul and (inaudible).

Personal Representative: Now, did you ever give him, ████████ any information, about the work, did you ever provide him anything?

Detainee: No. Yes, I did provide him legal. Mr. ████ he was the project manager, he give me translate acquisition letters to him, and I translate them, make in computer, and give him two copies. I gave one copy to ████████ and one copy to ████

Personal Representative: You were kinda ordered to do that, that was part of your job? Your boss made you do that and give it to ████████

Detainee: Yes, ████████ (ph) he was project manager, he told me.

Tribunal Member: Just to clarify, are we talking about ████████ they are employees of Dyne Corp?

Detainee: No. We had a contract with them, Global Securities in Afghanistan, so we had a contract between Dyne Corp and Global. ████ he was working with Global. And ████████ I don't know whom he worked for, I guess he came with ████ to the office.

Tribunal Member: Why do you think they were suspicious? Do you know what started this whole thing? Have they ever given you problems before?

Detainee: No.

Tribunal Member: They just all of a sudden started one day?

Detainee: Yes.

UNCLASSIFIED/~~FOUO~~.

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

Colonel, United States Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

## DETAINEE ELECTION FORM

**Date:** 05-Nov-04

**Start Time:** 1600

**End Time:** 1800

ISN#: 1008

Personal Representative: ▨▨▨▨▨▨▨
(Name/Rank)

Translator Required? YES          Language?          PASHTU

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? YES

----------------------------------------------------------------------

## Detainee Election:

[X]  **Wants to Participate in Tribunal**

[ ]  **Affirmatively Declines to Participate in Tribunal**

[ ]  **Uncooperative or Unresponsive**

## Personal Representative Comments:

Detainee WANTS to participate in Tribunals. Detainee has 1 non-detainee witness:

#1: Mr. ▨▨▨▨▨ the program officer for Dyn. Corporation an American Corporation with an office in Kabul AFG. The detainee worked as a translator and driver for ▨▨▨▨ Mr. ▨▨▨▨ an testify that:

    a.  Where the detainee worked was not a military base;
    b.  ~~That the detainee did not steal his computer, because Mr.~~ ▨▨▨▨ ~~allowed him to take~~
        ~~his computer home to take a computer course on it;~~
    c.  That it was part of his job responsibilities to take pictures of employees for their badges.

Personal Representative ▨▨▨▨▨                    Exhibit: D-A

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED

## Combatant Status Review Board

TO:  Personal Representative

FROM:  OIC, CSRT (01 November 2004)

Subject:  Summary of Evidence for Combatant Status Review Tribunal – SOHAIL, Mohammed Mustafa

1.  Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The United States Government has previously determined that the detainee is an enemy combatant.  This determination is based on information possessed by the United States that indicates that the detainee is associated with the Taliban or al Qaida.

The detainee is associated with the Taliban or al Qaida:

1.  The detainee worked at a U.S. military base in Kabul, Afghanistan.

2.  The detainee assisted a member of a terrorist organization, Hezb-E-Islami Gulduddin, who had plans to plant a bomb at a U.S. military base in Afghanistan.

3.  Hezb-E-Islami Gulduddin is a known terrorist organization that has long established ties to al Qaida.

4.  The detainee provided a list of personnel assigned to the Karzai Protection Detail and the serial numbers to their weapons to a member Hezb-E-Islami Gulduddin.

5.  The detainee provided photographs of a U.S. military base in Afghanistan to a member Hezb-E-Islami Gulduddin.

6.  The detainee provided computer media containing a template of the security badge used at a U.S. military base in Afghanistan and digital images of personnel involved with security at the aforementioned base.

7.  The detainee stole his work computer and transferred the information to computer media for the purpose of providing it to a member Hezb-E-Islami Gulduddin.

8.  The detainee applied for a visa to the United States under a different name.

UNCLASSIFIED

1 of 2

Exhibit R-1

UNCLASSIFIED

4.  The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

2 of 2

## Memorandum



| | |
|---|---|
| To : | Department of Defense        Date 10/29/2004<br>Office of Administrative Review<br>for Detained Enemy Combatants<br>Capt. Charles Jamison, OIC, CSRT |
| From : | FBI GTMO<br>Counterterrorism Division<br>Asst. Gen. Counsel ██████████████ |
| Subject | REQUEST FOR REDACTION OF<br>NATIONAL SECURITY INFORMATION<br>████████████████ |

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

The following documents relative to ISN 1008 have been redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/15/03

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958

Exhibit R-2  1 of 2

UNCLASSIFIED

UNCLASSIFIED

Memorandum from ████████ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 10/29/2004


        If you need additional assistance, please contact Asst.
Gen. Counsel ██████████ (██████████, ████████ or Intelligence Analyst (IA)
████ IA ████████████████████████████████████

-2-

2 of 2

UNCLASSIFIED//~~FOUO~~.

# Personal Representative Review of the Record of Proceedings

I acknowledge that on o̲2̲ December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #1008.

██ I have no comments.

___ My comments are attached.

LCDR ███████, USN
Name

O2DEC04
Date

████████
Signature

ISN #1008
Enclosure (5)

UNCLASSIFIED//~~FOUO~~.